**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

ALAN BELL,                                                              PLAINTIFF
ADC #158013

v.                                   2:19CV00063-JTK

GERALDINE CAMPBELL, et al.                              DEFENDANTS

<u>**MEMORANDUM AND ORDER**</u>

**I.      Introduction**

Plaintiff Alan Bell is a state inmate who filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging inadequate medical care and treatment by Defendants. (Doc. Nos. 2, 5) On December 10, 2019, this Court granted Defendants' Motion for Partial Summary Judgment based on exhaustion, and limited Plaintiff's claims against them to specific time periods. (Doc. No. 34)

This matter is before the Court on the Defendants' Motion for Summary Judgment, Brief in Support, and Statement of Facts. (Doc. Nos. 39-41). By Order dated March 20, 2020 (Doc. No. 43), this Court directed Plaintiff to file a Response to the Motion within fifteen days of the date of the Order, noting that failure to respond would result in all of the facts set forth in Defendants' Motion and Brief being deemed admitted by Plaintiff pursuant to Local Rule 56.1(c), or in dismissal without prejudice of his Complaint, pursuant to Local Rule 5.5(c)(2).[1]  Plaintiff then

---

[1]Rule LR5.5(c)(2) of the Rules of the United States District Courts for the Eastern and Western Districts of Arkansas provides as follows:

> It is the duty of any party not represented by counsel to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case and to prosecute or defend the action diligently . . . . If any communication from the Court to a pro se plaintiff is not

1

filed a Motion for Extension of Time, which this Court granted, giving him until May 1, 2020 to respond. (Doc. Nos. 44, 45)   As of this date, Plaintiff has not filed a Response.

## II.      Amended Complaint (Doc. No. 5)

Plaintiff alleged Defendants failed to adequately treat him for a severe rash which covered his entire body, causing constant itching which resulted in bloody sores. He alleged Defendants would not provide medications or creams to stop the itching and failed to timely arrange for his treatment by an outside dermatologist.

## III.     Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).   "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"   Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).   "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"   Id. at 1135.   Although the facts are

---

responded to within thirty (30) days, the case may be
dismissed without prejudice. . . .

viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "all material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party."   Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED.R.CIV.P. 56(e)(2).

According to the facts set forth by Defendants in their Statement of Undisputed Material Facts (Doc. No. 39), which Plaintiff does not dispute, Plaintiff was examined by a non-party nurse in January 2018, and was provided a medicated cream used to treat scabies. (Doc. No. 40-1, p. 1) Plaintiff submitted a health services request form on April 19, 2018, complaining about a rash on his legs, and a non-party nurse provided him with a one-month supply of hydrocortisone cream on April 21, 2018. (Id., pp. 13-14) Defendant Campbell examined Plaintiff on April 30, 2018 and diagnosed him with dermatitis. (Id., p. 15) She provided him with an Absorbase cream and Benadryl for itching and noted that a dermatology consult previously authorized for Plaintiff had been cancelled. (Id.) She then directed a non-party to reschedule. (Id.) A non-party nurse also saw Plaintiff on April 30, 2018 for chronic care, and ordered Gabapentin for him through August 28, 2018. (Id., pp. 16-19)

Plaintiff submitted a health request complaint about itching on June 1, 2018, and on June 3, 2018 a non-party referred him to a provider and told Plaintiff he was referred to an outside

dermatologist. (Id., pp. 20-21) Defendant Campbell saw Plaintiff on June 8, 2018 and attempted another dermatology referral after Plaintiff's prior appointment was delayed. (Id., pp. 21-22) She also prescribed him a hydrocortisone cream (Diphenhydramine) and Benadryl for thirty days. (Id.) Defendant Drummond examined Plaintiff for chronic care on July 6, 2018 and ordered an anti-fungal cream (Miconazole) for his rash. (Id., pp. 24, 26-27) Defendant Campbell treated Plaintiff on August 8, 2018 for complaints about his rash and ordered the Absorbase cream, fourteen days of an antihistamine (Hydroxyzine), and again inquired about the dermatology consult. (Id., pp 30-31) Drummond saw Plaintiff on August 21, 2018 and ordered Hydroxyzine, Absorbase cream and a steroid cream. (Id., p. 33) When Plaintiff reported that he ran out of his steroid cream, Defendant Campbell ordered a steroid cream (Permethrin) on September 18, 2018. (Id., p. 47)

Drummond saw Plaintiff on October 11, 2018 for chronic care and prescribed Miconazole cream, and a few days later renewed Plaintiff's Gabapentin prescription. (Id., pp. 56, 61) On November 7, 2018, Plaintiff saw an outside dermatologist, Dr. Adam Sills. (Id., pp. 63, 64-71) He diagnosed Plaintiff with dermatitis and noted self-inflicted lesions on his body. (Id.) He performed a "punch biopsy" and also noted that some of the prescriptions taken by Plaintiff could cause the itching. (Id.) He recommended that Plaintiff's Atorvastatin be stopped for a month and that Plaintiff be treated with the Absorbase cream plus an increase in the Gabapentin. (Id.) The biopsy ruled out a fungal infection, contact dermatitis and scabies. (Id.) Defendant Campbell ordered that all of Dr. Sills' recommendations be followed. (Id., p. 77) On December 13, 2018, Plaintiff's prescriptions for Betamethasone cream and Absorbase ointment were renewed until June 11, 2019. Id., pp. 77-79)

The Court limited Plaintiff's allegations against Defendants in the December 10, 2019

Order to the following: for Defendant Campbell, the time period between April 20, 2018 through December 21, 2018, and for Defendants Drummond, Bell and Clinkscale the time period from December 6, 2018 through December 21, 2018. (Doc. No. 34)

According to Plaintiff's deposition testimony, however, everything which happened to him occurred prior to when he saw the dermatologist in November 2018, and he could not point to anything Defendants Drummond, Bell, and Clinkscale did or did not do for him in December 2018. (Doc. No. 40-2, pp. 55, 57-58) Therefore, Plaintiff stated in his deposition that he was willing to dismiss his claims against those three Defendants. (Id., pp. 75-76) Plaintiff also stated that his complaint against Defendant Campbell centered on the nearly eight-month delay in seeing an outside dermatologist. (Id., pp. 58, 60) He admitted that although the dermatologist recommendations were followed, his problem was not completely resolved, and he still continued to experience rashes and itching. (Id., pp. 31, 49, 60-61) He also stated that none of the health professionals seemed to know what was effective for his rash. (Id., p. 51)

To support an Eighth Amendment claim against Defendants, Plaintiff must prove that they acted with deliberate indifference to his serious medical need.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).  See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment).  Furthermore,

prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, supra, 132 F.3d at 1240.

In this case, absent any dispute from Plaintiff to the contrary, the Court finds as a matter of law that Defendants did not act with deliberate indifference to his serious medical needs. The medical records show that Plaintiff was treated continuously from January 2018 through December 2018 by Defendants and other medical providers for Plaintiff's rash complaints (in addition to other medical issues associated with his diabetes). Defendants and other prescribed several different types of creams and antihistamines, and Plaintiff provided no evidence that the delay in seeing the dermatologist resulted in a detrimental effect on his health. While the length of the delay indeed is troubling, there is no evidence as to the cause of the delay and whether the cancellations were made by ADC personnel or by the outside dermatologist himself. Plaintiff also admitted that while he eventually experienced some relief from the itching, the dermatologist recommendations did not entirely cure his rash issues. Finally, Defendants provide the Affidavit of Dr. Jeffrey Stieve, the Regional Medical Director for Wellpath, LLC, the medical care provider for ADC inmates,

who reviewed Plaintiff's records and concluded that Defendants provided appropriate care and treatment to Plaintiff. (Doc. No. 40-3)

Therefore, absent a response and evidence to the contrary from Plaintiff, the Court finds as a matter of law that Defendants were not deliberately indifferent to Plaintiff's serious medical needs and did not violate his constitutional right to appropriate medical care and treatment.

## IV.    CONCLUSION

IT IS, THEREFORE, ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 39) is GRANTED, and Plaintiff's claims against them are DISMISSED with prejudice.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 6th day of May, 2020.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE